IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

PET QUARTERS, INC., et al                              PLAINTIFFS

v.                              4:04-cv-1528-RSW

THE DEPOSITORY TRUST AND CLEARING CORP.,
THE DEPOSITORY TRUST COMPANY, AND
THE NATIONAL SECURITIES CLEARING CORPORATION        DEFENDANTS

## MEMORANDUM OPINION & ORDER

The Defendants (collectively "Depository Trust") move for an order dismissing the Plaintiffs' (collectively "Pet Quarters") case (doc. #9).  Depository Trust claims Pet Quarters' state-based causes of action are barred by federal conflict and field preemption.  Because Pet Quarters' state claims conflict with Congress's intent to have a uniform and efficient system for settling and clearing securities transactions, Depository Trust's motion is **GRANTED** and this case is **DISMISSED WITH PREJUDICE**.

## I.   Judicial Notice

Depository Trust has moved for judicial notice of many documents for the Court's review on its motion to dismiss (docs. #11 & #67).  Pet Quarters objects, arguing that analyzing these documents would deviate from the Court's standard of review for a motion to dismiss.  The documents Depository Trust asks the Court to review are Securities and Exchange Commission ("SEC") releases published in the Federal Register, briefs and opinions of other jurisdictions, public disclosures filed with the SEC, and other SEC publications.  Pet Quarters also supplemented its record by

asking for permission to file an amicus curie brief written by the North American Securities Administrators Association, Inc. and filed in <u>Nanopierce Technologies, Inc. v. Depository Trust and Clearing Corp.</u>  These are the types of matters that are not subject to dispute and must be judicially noticed.  Fed. R. Evid. 201.  Furthermore, the Court may consider these matters when considering a motion to dismiss because they are public record. See <u>Levy v. Ohl</u>, 477 F.3d 988, 991-92 (8th Cir. 2007)(holding it was not necessary to convert 12(b)(6) motion into a motion for summary judgment where the extra-pleading matters were part of the public record).  Therefore, Depository Trust's motions for judicial notice (docs. #11 & 67) are **GRANTED.**

## II.  Facts

This case involves the complex manner in which securities traded on the national markets are settled and cleared after the trade.  Congress had directed the SEC to facilitate the development of a uniform, national system for settling and clearing securities transactions.  15 U.S.C. § 78q-1(a) (2000). Clearing and settling refers to the process by which ownership in securities are transferred for funds when a securities transaction occurs.  Paper certificates no longer change hands; instead, the transaction is recorded on a book-entry system.

Pet Quarters is an Arkansas corporation that sells pet supplies online.  Pet Quarters, as a young and growing company, sought additional financing from outside investors.  Allegedly,

Pet Quarters fell victim to an elaborate "death spiral financing" scheme where the outside financiers conspired to use their financing agreements with Pet Quarters to short sell Pet Quarters stock and intentionally drive down Pet Quarters stock price. This alleged scheme is the subject of <u>Pet Quarters v. Badian</u>, No. 4:04-cv-697 (E.D. Ark.), currently stayed pending the arbitration of several parties in New York.

The Defendants are the major participants in settling and clearing securities transactions in the national markets, and each occupies a different function in the system.  The Depository Trust and Clearing Corporation ("DTCC") is a New York corporation and the holding company of the Depository Trust Company ("DTC") and the National Securities Clearing Corporation ("NSCC").  DTCC is an industry-owned firm, meaning it is owned by the brokerage firms, investment and clearing banks, and mutual fund companies that are members of the national markets.  DTC and NSCC, as wholly-owned subsidiaries of DTCC, are SEC-registered clearing agencies that carry out the settling and clearing of transactions.

DTC is the primary securities depository for the national markets and accounts for the book-entry movement of securities from firm to firm.  DTC maintains physical possession of paper stock certificates and, through its nominee Cede & Co., is the record holder of all securities registered with it.  The participating brokerage firms and banks are the beneficial owners

of those same securities.  This system allows for the efficient record keeping of securities ownership in the national markets.

NSCC is the settlement and clearing arm of this system. NSCC provides a medium for the book-entry movement of securities. Generally, a seller and buyer of securities agree to a transaction on the trade date.  Three days later, on the settlement date, the seller delivers the securities to the NSCC and the buyer delivers the purchase funds to the NSCC through their DTC and NSCC accounts.  NSCC then delivers the securities to the buyer, resulting in an increase in its book-entry position, and credits the funds to the seller.

The dispute in this case arises out of the Stock Borrow Program ("SBP").  Sellers do not always deliver the sold shares to the NSCC by the settlement date.  This is known as a "fail-to-deliver."  Depository Trust designed the SBP to address this problem.  Originally, when a fail-to-deliver occurred, the buyer had to either wait for the seller to deliver the shares or cover the trade by purchasing replacement shares on the open market, making the seller responsible for any increased purchase price caused by its fail-to-deliver.  Under the SBP, Depository Trust participants volunteer to have their security positions loaned to the buyer that did not receive its shares.  NSCC will loan shares to the buyer, and then when the seller does deliver the shares, those shares are returned to the loaning participant.  Under the program, all parties are supposed to be returned to their appropriate book-entry position: the seller has sold the shares

for the funds, the buyer has received shares under the transaction, and the loaning participant has had shares returned to it.  The SEC has approved the SBP. SEC Release 34-17422, 46 Fed. Reg. 3104 (Jan. 13, 1981); SEC Release 34-50758, 69 Fed. Reg. 70852, n.57 (Dec. 7, 2004).

However, Pet Quarters alleges that the SBP creates "phantom shares" in the market and that naked short-selling schemes take advantage of this.  According to Pet Quarters, when a fail-to-deliver occurs, both the brokerage firm that loaned the shares and the brokerage firm that receives the shares act as owners of the same security.  In turn, the borrowing brokerage firm is free to sell or re-loan the shares again if another fail-to-deliver occurs.  Furthermore, according to Pet Quarters, a fail-to-deliver may remain open for an extended or indefinite period of time, and NSCC takes no action to close these open positions. Pet Quarters claims this results in an inflated quantity of electronic shares in the marketplace, which in turn dilutes the value of the shares.  Pet Quarters also contends this inflation of the market is good for Depository Trust because it profits from each transaction made, and if more shares are available to trade, it makes more commission.  Pet Quarters argues its suit is not an attack on the SBP; it claims it is challenging Depository Trust's misrepresentations of the SBP's defects and its failure to disclose all the facts about the SBP.

Pet Quarters sued Depository Trust in Arkansas state court, raising only state-law claims (doc. #1).  Depository Trust

removed the lawsuit to federal court (doc. #1), and Pet Quarters moved to remand the case back to state court (doc. #14).  This Court adopted Magistrate Judge Jerry W. Cavaneau's Proposed Findings and Recommendations (doc. #41), concluding this Court had jurisdiction over the case because it presented a substantial federal question (doc. #60).  The Court held oral argument on the motion to dismiss on January 29, 2008.

## III. Discussion

### A.    Standard of Review

For a motion under Rule 12(b)(6), the Court assumes the facts of the complaint are true.  Koehler v. Brody, 483 F.3d 590, 596 (8th Cir. 2007).  Traditionally, courts stated the motion could be granted only when the plaintiff could prove no set of facts that would entitle him to relief.  Id.  However, Bell Atlantic Corp. v. Twombly, __ U.S. __, 127 S. Ct. 1955 (2007), has changed this analysis.  To survive a motion under 12(b)(6), the complaint must "be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Id. at 1965; see also Schaaf v. Residential Funding Corp., __ F.3d __, 2008 WL 465481, at *3 (8th Cir. Feb. 22, 2008) (discussing standard for Motion to Dismiss).  The "no set of facts" language of Conley v. Gibson, 355 U.S. 41 (1957), "described the breadth of opportunity to prove what an adequate complaint claims, not

the minimum standard of adequate pleading to govern a complaint's survival." <u>Twombly</u>, 127 S. Ct. at 1959-60.

## B.   Structure of Federal Securities Clearing

In 1975, Congress amended the Securities Exchange Act of 1934 by adding Section 17A.  One of Congress's goals in passing Section 17A was, "The linking of all clearance and settlement facilities and the development of uniform standards and procedures for clearance and settlement . . . ."  15 U.S.C. § 78q-1(a)(1)(D) (2000).  Section 17A directed the SEC "to facilitate the establishment of a national system for the prompt and accurate clearance and settlement of transactions in securities. . . ."  <u>Id.</u> § 78q-1(a)(2)(A)(I).

The NSCC has implemented rules governing how the SBP is operated that must be followed.  <u>See</u> Nat'l Sec. Clearing Corp., <u>Rules & Procedures</u>, Addendum C at 265 (Dec. 31, 2007), <u>available at</u> http://www.dtcc.com/legal/rules_proc/.  The SEC has approved these rules.  SEC Release 34-17422, 46 Fed. Reg. 3104 (Jan. 13, 1981); SEC Release 34-50758, 69 Fed. Reg. 70852, n.57 (Dec. 7, 2004).  It is with this statutory and regulatory backdrop, the Court must consider whether Section 17A preempts Pet Quarters' attack under Arkansas state law.

## C.   Federal Preemption

The Supremacy Clause of the Constitution provides Congress the authority to preempt state law:

> This Constitution, and the laws of the United States which shall be made in pursuance thereof; and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the Constitution or laws of any State to the contrary notwithstanding.

U.S. Const. art. VI, cl. 2.  Preemption can be expressed, where Congress defines the scope of preemption, or implied, where Congress's intent to supersede state law is inferred.  <u>Fid. Fed. Sav. and Loan Ass'n v. de la Cuesta</u>, 58 U.S. 141, 152-53 (1982).  <u>See also</u> <u>Rowe v. N.H. Motor Transp. Ass'n</u>, ___ S. Ct. ___, 2008 WL 440686 (Feb. 20, 2008)(analyzing the expressed preemption effect of the Federal Aviation Administration Authorization Act of 1994); <u>Riegel v. Medtronic, Inc.</u>, ___ S. Ct. ___, 2008 WL 440744 (Feb. 20, 2008)(analyzing the expressed preemption effect of the Medical Device Amendments of 1976).  Implied preemption has two subsets.  The first is field preemption where the federal scheme is so pervasive in scope that the court infers no room has been left for state action.  <u>Fid. Fed. Sav. and Loan Ass'n</u>, 58 U.S. at 153.  The second is conflict preemption where although the state law is not completely displaced, it is superseded to the extent it conflicts with the federal law.  <u>Id.</u>  Conflict preemption exists where compliance with both the federal and state laws is impossible or where the state law "'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress[.]'"  <u>Id.</u> (quoting <u>Hines v.</u>

Davidowitz, 312 U.S. 52, 67 (1941)); see also Preston v. Ferrer, ___ S. Ct. ___, 2008 WL 440670, at *8 (Feb. 20, 2008)(holding a California statute forcing administrative agency jurisdiction in talent-agent contract disputes rather than agreed-to arbitration frustrated Congress's intent under the Federal Arbitration Act); Am. Agric. Movement, Inc. v. Bd. of Trade of City of Chi., 977 F.2d 1147, 1154 (7th Cir. 1992)(abrogated on other grounds). Federal law will preempt state-law claims that frustrate Congressional intent to uniformly regulate national markets. Am. Agric. Movement, 977 F.2d at 1156.   Furthermore, the context in which general state claims is applied is relevant to decide whether a uniform federal scheme would be obstructed.   Id. at 1157 ("The crucial inquiry, we reiterate, is the context in which a law is applied."); see also Preston v. Ferrer, 2008 WL 440670, at *8 (concluding the issue was not whether the Federal Arbitration Act completely preempted the California Talent Agencies Act, but rather, "who decides whether Preston acted as personal manager or as talent agent.").   However, preemption is not to be applied lightly, especially in areas traditionally governed by state law.   Medtronic, Inc. v. Lohr, 518 U.S. 470, 485 (1996).

   D.   **Field Preemption**

   In its order adopting the Proposed Findings and Recommendations, the Court held federal law did not completely preempt state law in the field of securities regulation (doc.

#60, at 3).  The Court disagrees that Congress has completely
occupied the field of securities regulation.  Therefore,
preemption of Pet Quarters' claims cannot be on the basis of
field preemption.  However, in the area of settlement and
clearing, the breadth of Congress's intent to create a uniform
system is important.


    **E.**    **Conflict Preemption**

    Neither party argues that Section 17A expressly preempts
state law and the Court has already found no field preemption, so
the Court turns to conflict preemption.  As an initial point, the
SBP, while developed and regulated by private businesses, may
still preempt state law because rules developed by self-regulated
organizations and approved by federal agencies are given
preemptive effect.  <u>Credit Suisse First Boston Corp. v. Grunwald</u>,
400 F.3d 1119, 1128 (9th Cir. 2005); <u>see also</u> <u>Merrill Lynch,</u>
<u>Pierce, Fenner & Smith, Inc. v. Ware</u>, 414 U.S. 117, 127
(1973)("conflicting law, . . . should be pre-empted by exchange
self-regulation 'only to the extent necessary to protect the
achievement of the aims of the Securities Exchange
Act.'")(quoting <u>Silver v. N.Y. Stock Exch.</u>, 373 U.S. 341, 361
(1963)).

    In <u>Nanopierce Technologies, Inc. v. Depository Trust and</u>
<u>Clearing Corp.</u>, the Nevada Supreme Court addressed the exact
issue before this Court in a case involving the same defendants

and a plaintiff company raising similar causes of action.  168 P.3d 73, 76 (Nev. 2007).[1]  After discussing preemption generally and field preemption, the court concluded the proper framework for the issue was conflict preemption and narrowed the issue before it to "whether imposing the requirements implicated by appellants' state law claims on respondents is inconsistent with section 17A's purpose of allowing the Commission to regulate and control a national system for clearing and settling securities transactions."  Id. at 82.

The court than analyzed each of the plaintiffs' claims individually.  Id. at 82-85.  Ultimately, the Nevada Supreme Court concluded compliance with both the federal regulations and Nevada state law was impossible, frustrated Congress's intent, and, therefore, was preempted:

> [I]mposing the requirements implicated by appellants' state law claims, which they primarily base on allegations that respondents conceal flaws in a Commission-approved national system for clearing and settling securities transactions, frustrates Congress's objectives with respect to the clearing and settling regulatory scheme and renders adherence to both that regulatory scheme and state law impossible. Federal law thus preempts appellants' claims.

Id. at 85.

---

[1]  Two United States District Courts have addressed this issue also.  Both concluded the plaintiff's state-law claims were preempted but primarily on field preemption and, if not under field preemption, then under conflict preemption.  See generally Capece v. The Depository Trust and Clearing Corp., No. 05-80498, 2005 WL 4050118 (S.D. Fla. Oct. 11, 2005); Whistler Invs., Inc. v. The Depository Trust and Clearing Corp., No. CV-S-05-0634-RCJ (D. Nev. June 1, 2006).

Turning to Pet Quarters' state-law claims in this case, the Court concludes much of the Nevada Supreme Court's logic applies. As with <u>Nanopierce</u>, Pet Quarters claims can be divided into misrepresentation and non-misrepresentation claims.  Pet Quarters argues that it is not facially attacking the SBP but is instead challenging the statements Depository Trust makes about the program.  However, as discussed below, Pet Quarters' causes of actions challenge the SEC-approved SBP Rules.

The Court starts with the misrepresentation claims.  Pet Quarters' first and fifth claims allege Depository Trust misrepresents that the SBP is a loaning program when in fact, "This transaction is actually a sale because the NSCC delivers the borrowed shares to the buyer who acquires all right, title and interest in the shares, . . ."  Compl. at ¶¶ 124, 174.  However, the SEC has approved the SBP rules as a loan-borrow program, not a sale program.  If Depository Trust described the SBP as a sale program, it would be in conflict with the SEC-approved rules.  Therefore, these two state claims directly conflict with the SEC's approval and are preempted.

Pet Quarters' second and sixth claims allege Depository Trust has misrepresented that it efficiently clears and settles trades, when in fact the use of the SBP is inefficient, creates phantom shares, allows fail-to-deliver positions to remain open for extended periods of time, and injures the market.  Compl. at ¶¶ 135-39, 181-85.  However, Congress directed the SEC "to facilitate the establishment of a national system for the prompt

and accurate clearance and settlement of transactions in securities . . . ."  15 U.S.C. § 78q-1(a)(2)(A)(I).  The SEC has registered the NSCC as a clearing agency and approved the SBP as a means of carrying out this congressional directive.  If Pet Quarters prevailed, the state-law application would hold the SBP as inefficient while the SEC has approved it as an efficient program.  Compliance with both laws would be impossible, so the state law would mandate the changing of a federally-approved program.  Therefore, the claims conflict with federal law and are preempted.

Pet Quarters' third and seventh claims allege Depository Trust has misrepresented the number of Pet Quarters shares the lending member has on account after it has loaned shares.  Compl. ¶¶ 150-53, 192-95.  However, as the court in Nanopierce and Magistrate Judge Cavaneau (doc. #41, at 30) observed, this challenge is the result of how a federally approved program is operated.  Challenging it under state law undermines Congress's intent and is, therefore, preempted.

Pet Quarters' fourth and eighth claims allege Depository Trust has represented that open fail-to-deliver positions will be filled by buying additional shares in the open market, but in fact, open fail-to-deliver positions are filled through the SBP. However, the Court agrees with the Nanopierce court when it concluded this challenge is intertwined with the allegation that Depository Trust is not following the SBP rules.  In the alternative, as Depository Trust notes, it means the SEC approved

13

a misleading program.  Either way, the attack is on the SBP
itself and is preempted.

The Court moves to the non-misrepresentation claims, which
include market manipulation, anti-competitive conduct,
conversion, intentional interference with contractual relations,
breach of the implied covenant of good faith and fair dealing,
and conspiracy.  Pet Quarters' ninth claim alleges Depository
Trust has manipulated the marketplace because shares exchanged
through the SBP account for no change in beneficial ownership.
Compl. ¶¶ 208-213.  It incorporates claim 1, alleging the SBP is
actually a sale, but then the NSCC characterizes the transaction
as a loan.  This conduct creates a false impression of Pet
Quarters stock in the marketplace.  However, this claim
challenges how the SEC-approved SBP functions.  It is a direct
state attack on a federally-approved program.  Granting relief
would declare the program invalid.  The claim is preempted.

Pet Quarter's tenth and eleventh claims allege Depository
Trust has violated Arkansas's antitrust laws by tying the SBP to
clearing and settling transactions (Compl. ¶¶ 215-27) and created
a monopoly by requiring membership in DTC and NSCC to lend shares
(Compl. ¶¶ 234-44).  Despite Pet Quarters' argument to the
contrary, this is a direct attack on the federal scheme of
providing a uniform system of settling and clearing transactions.
If Pet Quarters prevailed, it would be impossible for Depository
Trust to operate the SBP, which was developed to facilitate
Congress's goal of a uniform system and approved by the SEC, and

14

comply with Arkansas law.  Therefore, it both frustrates Congress's intent and is an impossibility and, is preempted.

Pet Quarters' twelfth claim alleges the SBP violates the Arkansas Fair Practice Act by preventing fair competition by covering shares through the SBP.  Compl. ¶¶ 252-60.  The Complaint states, "The Stock Borrow Program, by its mere existence, hinders competition.  The Stock Borrow Program is anticompetitive . . . ."  Compl. ¶ 254.  This attacks the SBP directly and prevailing on the claim would make compliance with the SBP and Arkansas law impossible.  Therefore, it is preempted.

Pet Quarters' thirteenth claim is for conversion.  The claim alleges the operation of the SBP is actually a sale and the sale is a wrongful exercise of dominion over those shares.  This claim directly attacks the SBP.  A finding that the SBP creates a conversion every time shares are lent would defeat the system as approved by the SEC.  Therefore, this claim is preempted.

Pet Quarters' fourteenth claim alleges intentional interference with contractual relations between Pet Quarters and its shareholders.  The Complaint alleges, "The operation of the Stock Borrow Program by the Defendants has interfered with and contravened the terms of Pet Quarters' Articles of Incorporation . . . ."  Compl. ¶ 278.  As with conversion, this is a direct attack on the SBP that would frustrate the intent of Congress and the SEC.

Finally, Pet Quarters' fifteenth and sixteenth claims allege breach of the implied covenant of good faith and fair dealing and

conspiracy.   These claims also challenge the SBP and Depository Trust's application of it.   Therefore, as in <u>Nanopierce</u>, these claims are preempted.

## IV.  Conclusion

Pet Quarters' non-misrepresentation claims attack the SBP directly.   For its misrepresentation claims, once the misrepresentations are examined more closely, it is evident that they also directly attack the SBP.   Complying with both the SEC-approved SBP and Arkansas law, assuming Pet Quarters prevailed, would present Depository Trust with an impossibility and would completely frustrate Congress's intent to have one uniform system of settling and clearing security transactions. Therefore, Pet Quarters' suit is preempted by federal conflict preemption.   Depository Trust's motion to dismiss is **GRANTED**. Because the Court has concluded federal law preempts Pet Quarters' case, it need not reach the personal jurisdiction or specific claim arguments.   Furthermore, giving Pet Quarters the opportunity to amend its complaint would be futile because using state law to attack the SEC-approved SBP would be preempted on

similar analysis.   Therefore, this case is **DISMISSED WITH PREJUDICE.**

**IT IS SO ORDERED.**

Dated this 25th day of February, 2008.

RODNEY S. WEBB, District Judge
United States District Court